UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SHAILA MOORE,

    Plaintiff,     Case No.
            Hon.

vs.

MICHIGAN MINORITY
BUSINESS DEVELOPMENT COUNCIL,
a Michigan non-profit corporation,

    Defendant.
_____/

Brian J. Farrar (P79404)
Noah C. Peltier (P89215)
STERLING EMPLOYMENT LAW
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy., Ste 250
Bloomfield Hills, MI 48304
(248) 644-1500
bfarrar@sterlingattorneys.com
npeltier@sterlingattorneys.com
_____/

# COMPLAINT AND JURY DEMAND

Plaintiff Shaila Moore, by her attorneys, Sterling Employment Law, for her Complaint against Defendant, submits the following:

## JURISDICTION AND PARTIES

1. This is an action for pregnancy/sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.,* as amended by the Pregnancy Discrimination Act, 42 USC 2000e(k); and Michigan's Elliott-

Larsen Civil Rights Act, MCL 37.2101 *et seq.,* arising out of Plaintiff's employment relationship with Defendant.

2.    Plaintiff Shaila Moore ("Moore") resides in Detroit, Michigan, within the Eastern District of Michigan.

3.    Defendant Michigan Minority Business Development Council ("MMBDC") is a Michigan non-profit corporation that conducts business and maintains its principal place of business in Detroit, Michigan, within the Eastern District of Michigan.

4.    The events giving rise to this action occurred within the Eastern District of Michigan.

5.    Plaintiff timely files her federal claim within 90 days of receiving her EEOC Notice of Right to Sue, which was issued on June 16, 2026.

6.    This Court has federal question jurisdiction pursuant to 28 USC 1331 because this action arises under the laws of the United States.

7.    This Court has supplemental jurisdiction over plaintiff's state law claims under 28 USC 1367(a) because the state law claim arises out of the same case or controversy as the federal.

8.    Venue is properly within this Court under 28 USC 1391(b)(1) and (2), because both parties reside in this district and are residents of the state of Michigan, and a substantial part of the events giving rise to the claims occurred in this district.

## BACKGROUND FACTS

9.      MMBDC hired Moore on or about March 4, 2024, as a Certification & MBE Services Consultant.

10.      MMBDC is a non-profit corporation with a focus on facilitating economic growth through networking and connecting minority-owned businesses to procurement opportunities and business development.

11.      At all times Moore was a loyal and dedicated employee with an excellent performance record.

12.      Moore received consistently high ratings in her 30 day, 60 day, 90 day, mid-year, and end-of-year performance reviews.

13.      Moore's direct supervisor, Teri Braddock, described her as being detail-oriented, conscientious, and independent.

14.      During Spring of 2025, MMBDC eliminated the Certification & MBE Services Consultant position and transferred Moore into a newly created position: Education and Innovation Consultant.

15.      In this position, Moore's duties included developing and managing educational programming for certified minority-owned businesses, designing and facilitating workshops, webinars, and learning initiatives, coordinating innovation partnerships, supporting business development programming, and managing grant-funded initiatives.

16. Moore excelled at this new role and continued to receive praise for her work.

**Announcement of Pregnancy and Company Neglect**

17. In June of 2025, Moore informed her direct supervisor that she was pregnant.

18. During an in-office meeting on or about July 1, 2025, Moore informed VP Sharon DeBary that she was pregnant.

19. DeBary's response was cold and uncongratulatory.

20. DeBary expressed concern over Moore properly informing management, and that her upcoming maternity leave would create challenges for MMBDC.

21. Later that day, Moore announced her pregnancy to the rest of her co-workers and supervisors.

22. Following this announcement, Moore observed a clear shift in how employees at a VP level or higher interacted with her.

23. Nobody at MMBDC provided Moore with details on the company's maternity leave policy.

24. Co-workers would frequently ask Moore when she was taking maternity leave.

25. Moore would answer that she was due in January and wanted to take leave in January after working through December, to the point where it was widely known throughout the office.

26. MMBDC was aware of this and still did not reach out to confirm Moore's plans or inform her of the logistics of maternity leave.

**Continued Neglect and Targeting from Management**

27. On or about August 22, 2025, consistent with MMBDC's policy, Moore submitted her self-evaluation for August.

28. MMBDC's usual process is to have a meeting with management to review these self-evaluations with the employee.

29. The usual timeframe for these meetings is about three weeks after employee submission, but never longer than a month.

30. For the remainder of Moore's employment, management neglected to reach out to her to schedule a meeting.

31. At least one other co-worker completed the performance review process, including two meetings with management, during that timeframe.

32. Moore did not receive her August 2025 performance review.

33. On or about October 2, 2025, Moore contacted HR to discuss her impending maternity leave.

34.     An HR representative told Moore that she was eligible for up to 12 weeks maternity leave. However, they gave her no instructions on how to schedule maternity leave.

35.     MMBDC never reached out to Moore to give her instructions for maternity leave.

36.     Many teams at MMBDC, including Moore's, had regular meetings to present work to MMBDC's president and other management for review.

37.     These meetings usually occur monthly.

38.     Moore's last meeting was on or about August 19, 2025.

39.     During that meeting, Moore presented updates on the Lunch & Learn programming she had been developing, which MMBDC found so promising that they asked her to expand the programming into a broader educational initiative for the MMBDC academy relaunch.

40.     At the conclusion of the meeting MMBDC told Moore she would be one of the first presenters at the following meeting because there was not time to cover everything.

41.     Moore completed the assigned expansion shortly afterward.

42.     Moore informally shared the completed project with members of her team.

43.     Moore's meetings were continuously postponed between September and November.

44. Moore never received the opportunity to present her work even though the project had been ready for months.

45. On or about October 14, 2025, Moore was sick and called out of work. On that day, a co-worker went into the office as scheduled.

46. MMBDC spoke with Moore about the incident and said that only one employee at the office was a safety issue and against company policy.

47. Moore took note of this policy going forward.

48. Although Moore was still recovering, she was so worried about management's concerns that she returned to work on or about October 16, 2025.

49. On or about November 10, 2025, another co-worker informed Moore that she would be unable to be in the office as her car was totaled.

50. If Moore were to go into the office, this would result in her being alone in the office in violation of MMBDC policy.

51. Accordingly, Moore did not go into the office and worked remotely, as she regularly did throughout her employment.

52. Moore notified the supervisor of her remote work and cited this policy as her reason.

53. MMBDC acknowledged Moore's remote work but cited this incident as a reason for termination in subsequent EEOC proceedings.

54. MMBDC blamed Moore for a co-worker's failure to come in and for refusing to violate a clearly outlined policy.

55. On November 13, 2025, MMBDC scheduled an online meeting with Moore and told her that there was planned restructuring, and that her position would be eliminated.

56. Rather than move Moore to a new position as MMBDC had seven months prior, the organization terminated her.

## COUNT I

### *Pregnancy/Sex Discrimination in Violation of Title VII, as amended*

57. Plaintiff incorporates the preceding paragraphs by reference.

58. At relevant times, Plaintiff Moore was an employee and Defendant MMBDC was her employer covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.*, as amended by the Pregnancy Discrimination Act, 42 USC 2000e(k).

59. The Pregnancy Discrimination Act prohibits sex discrimination, which includes discrimination on the basis of pregnancy and childbirth. 42 USC 2000e(k).

60. Defendant's treatment and termination of Plaintiff, as described above, was based on unlawful consideration of her pregnancy.

61. Defendant, by its agents, was predisposed to discriminate against Plaintiff based on her pregnancy.

62. Defendant's actions were deliberate and intentional, and engaged in with reckless indifference to the rights and sensibilities of Plaintiff.

8

63. As a direct and proximate result of Defendant's wrongful and discriminatory treatment of Plaintiff, she has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT II

### *Pregnancy/Sex Discrimination in Violation of Michigan's Elliott-Larsen Civil Rights Act*

64. Plaintiff incorporates the preceding paragraphs by reference.

65. At relevant times, Plaintiff was an employee and Defendant was her employer, covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2201.

66. Michigan's ELCRA prohibits sex discrimination, which includes discrimination on the basis of pregnancy and childbirth. MCL 27.2201(d).

67. Defendant's treatment and termination of Plaintiff, as described above, was based on unlawful consideration of her pregnancy.

68. Defendant was predisposed to discriminate against Plaintiff based on her pregnancy.

69. The actions of Defendant were deliberate and intentional, and engaged in with reckless indifference to the rights and sensibilities of Plaintiff.

70. As a direct and proximate result of Defendant's wrongful and discriminatory treatment of Plaintiff, she has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

**RELIEF REQUESTED**

For all the foregoing reasons, Plaintiff Shaila Moore demands judgment against Defendant as follows:

**A.  Legal Relief**

1. Compensatory damages in whatever amount she is found to be entitled;

2. Punitive damages in whatever amount she is found to be entitled;

3. A judgment for lost wages and benefits in whatever amount she is found to be entitled;

4. An award of interest, costs and reasonable attorney fees; and

5. Whatever other legal relief appears appropriate at the time of final judgment.

**B.** **Equitable Relief:**

1. An injunction out of this Court prohibiting any further acts of wrong-doing;
2. Reinstatement;

3. An award of interest, costs and reasonable attorney fees; and

4. Whatever other equitable relief appears appropriate at the time of final judgment.

## JURY DEMAND

Plaintiff Shaila Moore, by her attorneys Sterling Employment Law, requests a trial by jury.

Respectfully submitted,

STERLING EMPLOYMENT LAW

By: /s/Noah C. Peltier
  Brian J. Farrar (P79404)
  Noah C. Peltier (P89215)
  Attorneys for Plaintiff
  33 Bloomfield Hills Pkwy., Ste. 250
  Bloomfield Hills, MI 48304
  (248) 644-1500

Dated: August 6, 2026

11